Curia, per
Johnson, J.
The case concisely statedis this. Benjamin F. Harris mortgaged a house and lot in the town of Columbia to James Dillet, then commissioner in equity forRichland district to secure the payment of §1,569 due to William Goss. This debt being unpaid, a bill was filed in the court of equity to foreclose the mortgage : in the end a decree was made, ordering the sale of the premises m satisfaction of the mortgage. The defendants were the purchasers at this sale, at the sum of §4,200, and in their answer they state expressly that they became the purchasers at the request and entreaties of Harris, and, on his account, to prevent a sacrifice of the property; that it was agreed on between them, that they should hold it as security for the money to be advanced by them in satisfaction of the mortgage ; and that conformably to this agreement they *paid the commissioner the said sum of §1,569; that Harris gave a discharge to the commissioner for the balance; and that titles were executed to them by the commissioner and delivered to the defendant Black, in the absence of Hall, his co-defendant.
Pending those proceedings, and before the sale of the house and lot, the complainants had recovered judgments against the said Benjamin F. Harris to a large amount, and they expressly allege in their bill, after reciting the sale and purchase by the defendants, that §2,631, “the balance of the amount bid, with the interest, was due to the said B. F. Harris by the said William Hall and John Black, and is still in their hands and unpaid to the said B. F. Harris;” to which the defendants answer, accounting for it in the manner before mentioned. And the prayer of the bill is, that the defendants may be enjoined from paying over the amount to Plarris until the hearing of the cause, and for relief, &c.
In remarking on the defence, the chancellor observes that “no discovery is sought in the bill; there is no allegation calling for or requiring an answer; and that the facts set forth in the answer are altogether gratuitous. It, therefore became necessary for the defendants to substantiate these facts by proof, which they have failed to do.” This circumstance is made the foundation of the decree against the defendants, and taking this as our guide these questions necessarily follow.
1. How far the answer in this case is to be regarded as evidence ?
2. Whether the complainants are entitled to relief in the case made by the bill and answer, according to the facts properly in evidence ?
First. This is a bill for relief and not for discovery, with respect to which it may be admitted that the answer would not be evidence for the defendants; but it may safely be affirmed that there is no case in law or *equity, in which he who alleges an affirmative that is denied is not bound to prove it. Although in equity an answer to a bill for relief is not evidence for the defendant, yet if he deny the facts stated in the bill, it is incumbent on the complainant to prove them.
Let us apply the rule to the case. The complainants allege that the defendants have in their hands a sum of money belonging to Benjamin *538 F. Harris, still due and unpaid; and out of this fund they claim to be satisfied for a debt which the said Harris owes them. The defendants deny, in express terms, that they are in possession of any such fund; and they go on to state minutely the circumstances, from which they conclude that they have not been, and are not bound, to pay the demand of complainants. Now, here are the affirmative and negative; and, according to the rule, the defendants’ answer must stand for proof, unless it is contradicted by evidence which it was incumbent on the complainants to produce.
Second. The question then arises, whether the circumstances disclosed by the answer, and on which the defendants rely, as showing that they had no funds in their hands to which the complainants were legally or equitably entitled, support this conclusion.
It is assumed, that the contract between the defendants and Harris operated as a fraud upon creditors, inasmuch as if the whole purchase money had been actually paid into the hands of the commissioner, it would have been subject to their respective liens. Whatever lien the complainants had on the house and lot, before the sale by the commissioner, was abrogated by that sale ; and the excess would have been so much money in the hands of the commissioner, on which it could not legally attach. The complainants’ judgments were in the common pleas; and neither themselves, nor the officer of that court, could lay hold of it as a reprisal.* The only remedy was, by an application to that court in whose possession it was, if, indeed, the complainants had a right to it; but until that application was made, Harris must have had unlimited control over it. The demand upon him there was satisfied; and without the interposition of any other claim, the commissioner could not withhold the fund from him. He might have given it away, or made any other disposition of it that his caprice might have suggested. The complainants were, in the meantime, slumbering on their rights, and suffered the defendants to enter into this arrangement; and without imputing to them any such design, the charge of intention to defraud may be fairly retorted on them.
Divesting the case of the technical rules with which it appears to me to have been unnecessarily fettered, and viewing it in the plain dress of common "honesty, all difficulties are, I think, removed. At the request of Harris, the defendants purchased a prior incumbrance on his house and lot, with a view to prevent a sacrifice; and it was agreed between them, that they shall hold the property as a security for the amount advanced. A creditor, who had a subsequent lien, claims to be paid the amount of its value, and the defendants reply, there is the property, dispose of it; pay us the money that we have advanced, and take the balance to yourself. Where, let it be asked, is the injustice done to them? It is replied, that by the acceptance of the deed from the commissioner, they had consummated the contract for the purchase, and they must be bound by it. But it must be recollected, that Harris had, at the time, unlimited control over this fund, and a right to stipulate about it as lie pleased. And whether the contract between himself and defendants would have been fulfilled in good faith or not, the complainants were not, nor could they be interested in it, as long as their rights were unaffected *by it. The accidental destruction of the house, by fire, and the consequent *539 deterioration of the value of the property, may furnish a clue to the foundation of this controversy, and will probably prove equally unfortunate for both parties; but that circumstance cannot change the principle. The defendants having purchased, according to their own showing, as the friends and agents of Harris, the title still remained in him, subject, in the first instance, to their lien, and afterwards to the liens of other creditors in their order of priority. Black must stand on the same footing with other creditors, with respect to the debt due to him by Harris. The expenses for repairs and taxes are a charge upon the premises, and ought to be first paid. Decreed accordingly.

Decree reversed.